The court will be pleased. I have nothing to say about Judge Easterbrook, so he can rest easy. At least in my case. You never know when he comes up. You never know. He's a very thoughtful judge. We have three certified issues in this case. Issue number one regarding the error in the felony murder instruction, and two issues under Bowie v. City of Columbia, one dealing with the murder conviction, one dealing with the kidnapping conviction. Unless the court has any questions regarding the Bowie issue as it relates to the kidnapping issue, I will submit that this morning since we don't have a lot of time. Turning first to the instructional issue regarding the felony murder. We know in this case for a fact that the jury actively considered the theory that Mr. Dominguez was not the actual killer, but that Mr. Martinez was the actual killer. We know that because while it was deliberating, the jury propounded a question asking, well, what do we have to find? Is it sufficient if Mr. Dominguez was merely present at the time of the killing? So we know that this jury was actively considering, did Mr. Martinez strike the fatal blow? Let me ask you a question, because it seems to me your whole argument in this area deals with that note. And you just state that's what the jury said. But the jury was never pulled. There was no evidence of what they believed. There was never a hearing of what they believed. And, of course, all of us go by our own experience. But I was a trial lawyer for 15 years before I went on the bench. I know a little bit about notes. And the idea that even if one juror has a question, they'll send a note in, and you extrapolate from that that all 12 of them believed it. And sometimes they just do it for curiosity. I mean, there's a wide range of reasons why that note came in, and it may be entirely meaningless, and yet you're going to build your whole case on that. I want to know why it is that we should assume what you assume the jury believed when there's not an ounce of factual record on that basis. It is objective evidence, Your Honor. You're quite correct. It may not have been all 12 jurors who had this concern. It may have been one. It may have been one. Or none, if they're curious. They say we, but we don't know if we is the royal we, meaning one juror or not. But under our federal constitution. But unless you have some evidence that they've been interviewed or something, how can you build your whole argument on that? Under the federal constitution, the government has to secure 12 unanimous votes to obtain a conviction. So even if only one juror is considering the factual theory that Mr. Martinez is the killer. Okay. Let's say that all 12 of them aren't considering it, but one of them says, hey, I'd like to know about this. Let's send a note in and get some instruction from the judge. There's so many scenarios that could go on. So I'm just curious if we're going to write an opinion, how are we going to say the jury believed X? And what are we going to refer to in the record to show that other than a note that doesn't tell us the background? I'm just having a problem with the case. I'm not saying you're right or wrong. I just want to know how we get from point A to point B. It's the only evidence we have. I mean, in the usual case, we have no idea what the jury was thinking. I mean, our system is built on the secrecy of jury deliberations. So what the cases have said is we have a list of objective factors that we have to look at. We look at what the jury has inquired about by way of notes. We look at the length of deliberations. That tells us whether or not a jury was troubled. We look to see if the jury has requested a readback of particular instructions or a readback of testimony. Was the note signed? That's an interesting question. I don't know, Your Honor. I do not recall. Would you like me to look at the document? It's not signed. It is not signed? Not signed. I'm not sure I see any legal significance to that. I mean, we know for a fact that it came from the jury. And if I'm missing something there, please let me know. But I'm not aware of any legal significance to whether a jury signed it or not. You're going to write the case, and you say the jury believed X because of this note because, and then what would we fill in the because to show that we were correct, that the jury believed this scenario? I can only repeat what I've already said, Your Honor, that if a note issues from the jury posing a specific question, we know for a fact that a minimum one of the jurors was concerned about the particular matter addressing. I think we think it. I think we're required to believe it. I mean, I don't see how a contrary conclusion can be reached. I mean, we have to assume that the note is not issued for a frivolous purpose. I mean, after all, this is a first-degree murder case, and we assume the jurors take their duties seriously. The jurors say, okay, what are my alternatives? Is this really an alternative that we can think about? It doesn't mean that a juror has made up their mind. There can be a wide variety of things. That's the problem I have with the case. We purposely keep the jury sequestered from what's going on, and now we have to try and open up that to tell what the jury really meant. Well, we've pushed it far enough. I just wanted to get your view on that because it is somewhat troubling. Go ahead. Let me go about this a different way. The defendant's testimony in this case was essentially I did not perform the acts that resulted in murder. He denied that he had strangled or beaten the victim. He said they had the intercourse and then he walked away, and that's all he knew. That was his testimony. So by implication, his version is that Mr. Martinez must be the killer because there's only the two of them there and he's denying that he did it. So when the jury issues this note and the inquiry is made, is it sufficient for conviction if Mr. Dominguez is merely present? That tells us, again, that at least one of these jurors is actively considering the defense theory that Mr. Martinez is the culprit. And then, of course, we get to the next step that the trial judge gives the jury absolutely no guidance with respect to how they would go about finding Mr. Dominguez guilty if Mr. Martinez is, in fact, the guilty party. And, indeed, the government has conceded throughout this litigation that it was error not to give the appropriate standard instruction, which would have explained that Mr. Martinez must have been jointly engaged in the commission of the rape and must have maintained the specific intent to assist in the rape. Right. But, you know, we are on habeas here. So if you're on direct appeal, your argument might have greater force. But how do you deal with the California Supreme Court decision to the contrary? Well, frankly – You may think they're wrong, but why don't we owe them some deference? Well, in this case, no deference is due because the California Supreme Court failed to apply the appropriate U.S. Supreme Court authority. The applicable U.S. Supreme Court case is Nieder v. United States, which sets forth a very specific test that is to be applied when the trial court errs by failing to instruct on all the elements of the offense. The California Supreme Court did not cite Nieder. They did not cite the test from Nieder, and therefore they didn't apply it. So under the U.S. Supreme Court case of Panetti v. Quarterman and this Court's case, Franz v. Hazy, no deference is due whatsoever. This Court must now de novo examine the same issue. You have about 40 seconds left. Do you want to reserve? I will reserve my time. Thank you, Your Honor. Go to the government. May it please the Court, John Dice for the people. I think the instructional omission here was harmful to the people. The instructions as given suggested that a person could only be guilty of felony murder if he was the actual killer, and that's incomplete. You can be guilty of felony murder so long as you commit the felony and the victim dies by accident, by an act of a third party or a co-felon, and the omitted instruction would have assured the jury. You can find Mr. Dominguez guilty of felony murder even if Martinez was the killer, and I think that's what gave rise to the note. The jury clearly found that Appellant kidnapped the victim, raped her, and that she was killed in that orchard where the kidnapping and rape occurred. I do think it's conceivable that one of the jurors might have said, Gee, as we read these instructions, they seem to imply that this defendant can only be guilty of felony murder if he actually strangled her. I think that's what prompted the note. They probably wondered, is the law that strict? And if they had been given the instruction, the judge would have said, no, if Mr. Dominguez raped and kidnapped this woman and if she was killed in conjunction with that rape and killing, sure, he's guilty of felony murder. Even if it was Martinez who actually used the cloth to strangle the victim, if it was immediately after or during the kidnapping and rape, Mr. Dominguez was guilty of felony murder. And so the omitted instruction would have made it much easier for the jury to convict Appellant of felony murder. I think that's what prompted the question. I'd also say that the California Supreme Court did apply the correct test. The court did not cite Nader, but it did a harmless analysis, harmless error analysis, and the court found on overwhelming evidence that Mr. Dominguez was actively involved in the kidnapping, the rape, and inescapably the murder. He was with the victim. Well, what about the argument that there's no logical connection? Your Honor, I think the facts overwhelmingly show a logical connection. There's no dispute on correct instructions. The jury found that Dominguez kidnapped this woman for the purpose of raping her and that he actually did rape her. The facts show that the rape was violent, the bruising to the vaginal walls, the blood on the blue jeans. Rape is inherently violent. His semen was inside her, so there's not much of a question there. The issue is whether or not his story that he testified to, that he left, and then there was some problem with questions about evidence of the footprints, and I suppose the jury could have relied on there were footprints on both sides paralleling, pulling someone across. But there was some question raised with that. Yes, there was some question about the two sets of footprints. But taking the evidence as a whole, Mr. Dominguez's defense was, I had consensual sex with her, I didn't touch her at all, and the jury categorically rejected that. The jurors found, no, you kidnapped her and you raped her, and the facts showed that the rape was violent. I would also say, start at the beginning of the night. Dominguez and Martinez were with the victim in a Hollister bar. They rode a cab out to the labor camp where Dominguez and Martinez worked and slept. They got out of the cab. The cab driver saw the victim walking down the road toward the orchard with two men following her. It's undisputed. Those men were Dominguez and Martinez. The victim was killed in the orchard. She was beaten. She was raped. She was killed in the orchard, and she was buried there. There was testimony that it looked like there were two sets of footprints on either side of the drag marks of the body, from the site of the killing to the site of the burial. Even if that evidence was impeached, Dominguez and Martinez suddenly and mysteriously left the labor camp a couple nights later. They were walking down a rural road late at night. A police officer stopped them. Dominguez gave false identification. He was asked about the murder in the subsequent days. He initially said, I know nothing about it. I was nowhere near that bar that night. When evidence came out, no, no, a police officer saw you with the victim. He said, yeah, okay, I was with the victim, but I went home to bed. Later evidence came out. Your seminal fluid was found inside that woman. He said, okay, I guess, yeah, we had consensual sex on the road. The jury categorically rejected his testimony flat out. And so for him to say, I had consensual sex and then I left her with Martinez, the jury never would have bought it. If the jury found that he kidnapped her and he raped her under California law, even if he had gotten up immediately afterwards and said to Martinez, don't touch her, I prohibit you from doing anything to her, by that point, if he left her in a weakened condition, she's bloody on the ground after having been raped forcibly. If Martinez killed her entirely on his own, there would be a logical connection between the kidnapping and rape committed by Dominguez and the killing. Were there instructions given on that scenario? The instructions would have clarified that so long as there is a logical connection. So the instructions that were given, do they include that scenario? The instructions simply said, if the victim was killed in the commission of a rape or a felony, then the defendant is guilty of felony murder if he had the specific intent to commit the felony. So, again, my key point is the jury did find that he intended to commit the felony, that he did commit two felonies. And so if this omitted instruction had been given, the jury would have been assured, so long as Martinez's killing of the victim had any logical connection to Mr. Dominguez's kidnapping and rape, Dominguez is guilty of felony murder. And, again, I think that the only way that Dominguez could be innocent of felony murder would be if Martinez had played absolutely no role in the kidnapping and rape and then after the kidnapping and rape were concluded, Dominguez left, maybe an hour passed, and Martinez killed the victim entirely on his own. That scenario simply was not conceivable. The California Supreme Court unanimously rejected it. The district court said that analysis strained reason. I think the facts support that. Any further questions? All right. Thank you. I'll be the first to admit that these are not the most helpful facts for the defense. Clearly, we have a brutal killing here. But, again, the focus cannot be on how horrible the case is. The question is, was the jury properly instructed, if it determined or one juror determined that it was Mr. Martinez who actually struck the fatal blows? The jury received absolutely no guidance regarding the elements it had to find if Martinez was the killer. Earlier, I didn't get a chance to get to my Bowie claim, and I would just mention it briefly, that prior to this case in the California Supreme Court, it was a settled element that there was a specific intent requirement on the part of the actual killer. The jury in this case had no idea that that was required. So if, in fact, one or more jurors believed that Martinez was the killer, they decided this case in an absolute legal vacuum. They may have believed, under the instructions given, that it was merely sufficient if Mr. Dominguez had committed the rape and then remained there. And we know that that is not the law, that more is required. And Mr. Martinez must himself have been an active participant in the rape, and the jury received no guidance on that. Thank you, counsel. Thank you. Thank you, Your Honor. The case this Court will be submitted for decision. And we'll proceed to the case of United States v. Chaudhary. May it please the Court, I am Kirby Heller. I represent the government. And, Ms. Heller, why don't you move the microphone down just a little bit. Although you're speaking up nicely, but thank you. Okay. Thank you. The question before this Court is whether Congress intended that defendants who were lawfully convicted while they are competent and who become incompetent before sentencing should be unconditionally discharged from the criminal justice system. The text of the relevant statutes, the structure of the statutory scheme, and indeed the purpose behind the Sanity Defense Reform Act all demonstrate that the answer to that question is no. And that the district heard when it applied the provisions of Section 4241D, which applied to defendants who were incompetent to stay on trial, rather than Section 4244D, which applied to convicted defendants with mental disease or defect, and therefore held that he could not, that Mr. Chaudhary could not be provisionally sentenced. What do you lose by the district court going the way it did, other than some sort of a sentence that's put in abeyance? What does the government lose? Where's the prejudice? Well, the prejudice is that under 4244, which we believe is the applicable statute, Mr. Chaudhary would be committed to the custody of the Attorney General for hospitalization, in effect commitment, for treatment and care, and that for the provisional sentence is the length of the maximum sentence of conviction. And if during that term of commitment he does improve so that he can be sentenced or sentenced to a term of imprisonment, then the court could do it. But the government is entitled to hold the defendant. He's a convicted defendant, a lawfully convicted defendant, for that term. Well, you want to hold him in some type of medical facility? That's right. Not in prison. No, he can't be imprisoned. He can be hospitalized. So instead of being in a medical facility until they find out that they can't do any good for him, he's put in the care or custody of a guardian in a sense. Well, we can't under the district court's interpretation of the statutes and what the district court did is he's free to go. He's gone. He's out of the criminal justice system. There is nothing we can do now to get him back. Oh, that isn't true. That isn't true. The indictment wasn't dismissed, was it? The indictment's not dismissed, but he's not in our custody in any way. Under the section that was used, you can any time you suspect that he's become miraculously competent, you can ask for a medical opinion and make that determination, get him right back into the system to be sentenced, can't you? I'm not sure that we can, Your Honor. I'm not sure any of the provisions, 4241 or 4244, would allow us to have another hearing. It says you can have a hearing any time, any time it says. So you can ask for it. Well, and you can have a hearing if there's reasonable cause to believe that he's incompetent. We're beyond that now. Of course, he's been found incompetent. I don't believe that the statute allows us to ask for a hearing because we believe he's become competent. No, you'd have to make a showing to the district court. But if you made a showing and you had the actual facts that he's now competent or suspected of being competent, I suspect you could go to the district court and ask for a hearing. I certainly don't read the statute. That would be nice if that were the case. I don't read the statute. I was going to say, you don't want to argue against that position, do you? Well, I certainly don't. I don't. That's why I'm kind of in a bind. But the statute makes sense, perhaps common sense, but that's not the way the statutes read. Well, okay. I'm just saying, I'm just trying to figure out. The district court had to make a decision. You made it one way or the other. It wasn't an easy case. And I just want to find out what your prejudice is to the government by the decision that was made. Right. Because there's no harm, there's no foul. Well, we do believe there is. And the reason that the wording, I don't want to be arguing against that if that's how we ended up. But the reason that the statute doesn't permit that again is because 4241, in our view, and we believe that view is supported in many ways that I can get into, only applies to determinations about trial competency. And, of course, that's why it doesn't really fit with this scenario. Now, the other thing that we're going to ask, how is this final order? Okay, Your Honor. Several ways. When the district court refused to impose a provisional sentence, which is what we believe is required under 4244, that ended the criminal matter. Again, this relates to the other questions. We believe that there was nothing further to be done in this criminal case. It's a refusal. But under Russell, we have to have a final order, don't we? Yes. We believe that that was a final order. Well, he could still be sentenced. Well, he can't. We don't believe that there is a mechanism for sentencing him once the district court determined that he was incompetent to be sentenced and refused. So does that mean that this whole matter and issue is held in abeyance until his competency has been determined? Well, his competency has been determined, and it's been determined for all intents and purposes that he's incompetent, and that ended this criminal matter. In fact, the district court saw it as final. But he hasn't been sentenced.  He's incompetent to be sentenced. So this isn't over, is it? It isn't over until it's over. Well, by refusing to impose what's required under the statute, under our view, that's in effect a final order. We cite an old case from the Ninth Circuit. I believe it's von Moos, where a district court refused to impose a sentence because it thought it didn't have the authority to do so, which we think is equivalent to this. And this Court held that that was appealable in a final order. Well, it was appealable because it looked final and it smelled final and tasted final, even though he wasn't doing it. But we don't have that here. The district court has never indicated that. We still have a pending indictment. Where does our jurisdiction come from? Well, we do believe that this is a final order, Your Honor. We do think even the reason it's the reason that there isn't a sentence, of course, and there isn't a provisional sentence is because the district court, by going on 42-41 instead of 42-44, and did the inquiry. In fact, the district court himself said, once I find that he can't be committed on dangerousness grounds, he's free. And in fact, the court said, I can dismiss the indictment. Now, it didn't do that because we're appealing. No, I know. If he had dismissed the indictment, you can come forward. But it seems to me the judge still has contact with the person. There's an indictment sitting there. He's under order at the request of the government. Restrictions were placed on it. Now, the government, it seems to me, has got another way it can go. It's a little more difficult, and that's mandamus. If, in fact, you believe there has been this travesty, you could go for mandamus, but you've chosen to go for appeal, and we are having difficulty finding a final order from which you can appeal. Well, I guess the difference we're having, Your Honor, is we don't believe, to our detriment, that there is a mechanism for keeping this pending before the district court to periodically say you can come back for sentencing. We simply don't see that in the statute as written. And the reason we don't see that is because we believe that Congress intended a defendant such as Mr. Chaudhry to be going through the 4244 procedure, which would keep him in our custody, and that by going the 4241 route, which, as I said, we believe only applies to trial competency issues, once those are decided, he is really out of our control. And, in fact – But if we wrote an opinion that said you had that right to go back, you couldn't object to that, would you? Well, we do believe that he should be committed under 4244. That would be better than having no control whatsoever, but we do believe that section 4244 – Right. But I mean, sort of, I mean, it would be illogical for Congress to say you can never revisit competency once it's determined, wouldn't it? That's right. We do – But that's what you think. We absolutely agree with that, and that's why we believe section 4244 covers this case on all fours. Well, it does, but I mean, that doesn't necessarily preclude a redetermination of competency under the other statute, does it? Again, I don't see the fit between the wording of 4241, the structure of the Insanity Defense Reform Act, the legislative history, indicating that those provisions either apply to someone like Mr. Chaudhry or would allow the government to keep saying – well, allow the government to both bring him back for sentencing and to require treatment. After all, the purpose of 4244 is to care for a defendant who has a mental disease or defect, to treat the defendant who has a mental disease or defect for the purpose of a sentence, to be able to be imprisoned. After all, he has been convicted. He has a lesser liberty interest than the 4241 defendant who only has charges pending who has never been convicted. Right. But the district court has never said you can't come back, right? Yes. I believe the district court did say that. The district court said, I'm releasing him. It didn't say he can never come back. He said, I'm releasing him and I'm going to dismiss the indictment. So it's – And the government did not appeal. That was really not – there was no indication, and that was begrudgingly, but that was only because the government had appealed. That was not to keep him with conditions to see if he'll become competent. In fact, the government asked that during these bail conditions that the court impose some treatment requirements, and the court said, I'm not doing that. If you go in there in 4244, what's the extent of time that you keep him in this hospital facility locked up? You keep him for the maximum sentence of the offense of conviction. Even though the judge may give probation. I doubt the judge would in this case. But even if the judge were thinking probation, you could keep him for the entire time in this hospital lockup. You could keep him for that, and we believe that that's certainly a – that was Congress's choice in – Yeah. Right. Okay. I think we have the argument in hand. Do you want to save some time for rebuttal? Yes, certainly. Okay. May it please the Court. Gary Dukoff for Appellee Chaudhry. I'm thrilled to be back before this panel because I now know, which I did in two days ago, that Judge Wallace is a fanatic about jurisdiction. And I sense that the Court – You should be a fanatic about something. She's jurisdiction. Perhaps I should have known that before. How is it that your client miraculously recovers tomorrow? Well, I – Which the District Court wouldn't do. I agree with the suggestion of the panel that there is no – nothing in the statutory scheme that prevents the government from asking the Court to have him reevaluated to see if he's been returned to competency. And, by the way, the Government Counsel stated that her memory of what the District Court said, which is that I'm going to dismiss the indictment, that won't be found anywhere in the record. I don't believe the District Court ever did say that. So that's one thing to keep in mind. But getting back to the jurisdiction question, this Court has stated the finality standard in many different ways, basically getting at the same thing. But this – this appeal doesn't meet any of those standards. One of them is the District Court's intent. You look at the intent of the Court when it entered the order that's being appealed from. In this case, Judge Breyer could not have possibly intended for it to be his last act in the case because he had no idea how the dangerousness evaluation was going to turn out. And, in fact, I returned to Judge Breyer on October 29th of 2009 to discuss logistical issues about the evaluation process. And he entered an order, which is at CR 226, in which he directed the – directed FMC Butner to hold on to the – to defend it until further order of the Court. So there's a written document that actually states outright that he intended to hold on to it until further order of the Court. And Judge Breyer intended to enter further orders. So as far as that particular test, that's not met. I mean, it strikes me as – I'm sort of sympathetic with the government. It's kind of strange. Here's a person who's been convicted of huge tax frauds and has been completely convicted. He's just waiting for a sentence, and all of a sudden somebody decides he's incompetent. So we have a person who's guilty of serious felony, and nothing is going to happen to them because medical people say they're not competent now to receive their sentence, although they were competent during the trial. Something happened after that, apparently. So now we're going to do timeout, but the timeout keeps getting extended further. He's over on the East Coast. He's under the care of his daughter. There's a little way that the government can check on him on what he's doing in his life. Until they see something, they could have put a tail on him, I guess. And until they can come up with some real facts to bring him back into jurisdiction, he's staying out there, never to be serving a sentence for a very serious felony. Is there an alternative to these between 41 and 44? Well, I don't see a necessity for making that predicate showing before the government returns with its request to have him evaluated for competency. That's certainly not in the statutory scheme. They could wait six months, a year, file a request with the district court, and the district court could properly order him evaluated again. I don't think in this particular case it's going to get them anywhere, because the records, the medical opinions are clear that he's not likely to regain competency because there's an organic origin to his problem. But, you know, that's a different issue. Let them come and ask for a reevaluation, and the court can grant it. And by the way, the government has framed this issue as if Mr. Chaudhry lost his competency in the few months between the return of the verdict and the time that sentencing was set. But there's absolutely no support in the record for that. What clearly happened in this case is there was an inexperienced federal defense practitioner representing him in the trial proceedings who didn't have any experience, which he stated candidly on the record, with competency matters. So he went through the whole trial. And I agree with Your Honor that, of course, it's understandable the way the government's reacted. They're not happy they were forced to go through an entire trial only to deal with this at the end. But it shouldn't have come to that. A competent counsel understanding the competency issues would have raised the issue and avoided the whole mess by having him evaluated prior to trial. It didn't happen in this case. It's part of the unusual circumstances of this case. But it certainly doesn't assist the government in its argument that it's 42-44 that applies rather than 42-41, which is the gist of their whole argument. And it's so clearly wrong. I mean, it was clear to Judge Breyer. It was clear to the Morris Court. It was clear to Judge Weinstein. The whole focus, competency is not mentioned in either 42-44 or in the legislative history that the government keeps citing when it serves their purposes. Congress never contemplated applying 42-44 to competency issues. And the way the court knows that for sure is sentencing under its terms is conditioned upon the need for care or treatment. So the court can send a mentally ill convicted defendant to this mental institution until he's no longer in need of care or treatment, not until he's no longer incompetent. That's the fulcrum upon which the whole affair turns. As soon as an evaluation is made that says the defendant's no longer in care, in need of care or treatment, he's returned to the district court for sentencing at that point that's been put off under the provisional sentencing provision. So why shouldn't we get to the bottom of the thing and get it before the court to make a decision so it can get up to see us? Why shouldn't we say this looks like, smells like, feels like a final order because it can continue on forever without any change? Why shouldn't we consider it as a final order and assume jurisdiction? Well, just because it's not a final order, it doesn't meet any of the finality tests. And it also would defeat the strong congressional policy underlying the finality requirement, which is to avoid piecemeal review of issues as they come up in the course of a case. But what issues are left? Excuse me? What issues are left here? What issues are left? The government could have appealed the dangerousness, the lack of dangerousness assessment, and they could have appealed the release. And I keep pointing out that the government is trying to bring the release order within the scope of this appeal when they filed their notice of appeal months before. Yeah, I probably misspoke. What I meant was if the idea is we're going to avoid piecemeal adjudication, what's really left of this case to adjudicate for us? I mean, nothing's going to happen. As everyone seems to concede, he has an organic brain problem. He's not likely to recover his competency. So it's unlikely that anything else is going to happen in the district court, right? Okay, well, the government doesn't agree that he's not likely to regain competency. They think the whole thing is some kind of scam. Well, what's that? Would you speak up a little? I said the government doesn't concede that he's not likely to regain competency, but they never challenged that order below. But, I mean, what's piecemeal about the adjudication of this issue? This is my question. Well, I agree that this particular issue was raised, you know, in this appeal, and it was discussed, and whether 4241 or 44 applies, you know, has been briefed. And if the court wants to circumvent the finality of standards. No, no, I'm just trying to get my head around this particular issue and within the rubric. And I credit your arguments. I doubt we have jurisdiction, but I'm not sure about that. And in many ways, the government has a point that this is about as final as you can get in this case. Okay, and don't forget. No, I'm not arguing with you. I'm just asking for your position on it. Right. Because we have to write an opinion one way or the other. Okay, so my position is I don't think that the finality requirement is so easily, you know, manipulated. I think the standards are set and that this order doesn't meet the standards. But I just want to remind the panel, the portions of my brief, which address the other aspect of the court's ability to hear this case, which is does the government have the authority to appeal it in the first place. And that is dependent apparently on the court's interpretation of 3731, which is the overarching statute that authorizes government appeals in criminal cases. And, you know, I must honestly say I've never made this particular argument before in my career, though the government makes it every day of their lives, which is that they've waived the ability to rely on 3731 because it wasn't raised in their opening brief. A case that they relied on in their reply brief is United States v. Dior of this court in 1982. And what that case says is, quote, the government must show that it has the right to appeal and that the order appealed from comes within the terms of a statutory grant of appellate jurisdiction, end quote. So the 1291 question we were just discussing is the latter portion of their burden, but they also have the burden to show that they had the right to appeal. They blew it in their opening brief by not mentioning anything other than 1291. 1291 does not grant that right to appeal by universal agreement. The first time they rely on 3731 is after I point out the problem in my answering brief, and they raise it in their reply brief. And I think the law is quite clear in this circuit that arguments not raised by a party in its opening brief are deemed waived. So that's my first response. Thank you. What's your view of mandamus as a possible way of getting to this if the government chooses to do it? I really haven't given that a moment's thought, Your Honor, and I don't know. I just don't know enough about mandamus procedurally. Often when something isn't final, mandamus is an opportunity if the government can show the Bauman factors that will allow them to get to their United States versus Bauman. It's a good case. It's well written. Well, I mean, along those lines, too. That's an excellent case. We do occasionally construe these kind of notice of appeal as a request for a writ of mandamus, but under the Bauman factors, it's a pretty high bar, I mean, a pretty high standard to meet. I mean, that's another option for us if we want to get to the merits, but I'm not sure the government wants us to do that. We'll hear a rebuttal on that. Okay. But I guess as a practical matter, this is what I was trying to get at. As a practical matter, this case is over, isn't it? Well, only I don't believe it's over until the government dismisses the indictment. I think it's completely a decision that they have to make. And as I said, as long as the indictment, I don't want to put any ideas in the government's head, but as long as the indictment is pending, I think they have the right to go back to Judge Breyer, you know, in six months or a year, two years, and ask for a reevaluation. Okay. So if we end up deciding on that basis and they go back to Judge Breyer, I expect you're probably not going to argue then that they don't have the right to do that, are you? Well, can't we leave that decision to them?  and he's made a number of arguments occasionally and I'm sure that he'll play it back for you. I hope to deal with that when the time comes, Your Honor. And I have about three minutes left. Yes. I'll just reserve that. Thank you very much. Just one question. Sure. Would you resist sentencing on some other ground like laches or something? What would you do here? Practicality. We send it back to Judge Breyer. Judge Breyer says, Bring him back. We're going to sentence. We give the sentence, and then you... I only resist sentencing on one ground and one ground alone, which is you cannot sentence an incompetent defendant. Now, the government is trying to work around that, you know, traditional, deeply rooted rule of procedure. Finality. Go ahead. Yeah. And I say that that's a black letter law, that you can't do it, and until they can establish his competency, then they can't, Judge Breyer can't sentence him. That's basically my position. Now, counsel, I know you're used to being the appellant, but, you know, you don't get a rebuttal on this. Oh, that's a very good point. You said you were going to reserve. I just don't want you to think you've got something else. If you've got to make a point, you've got to make it in your last two minutes. Okay. I think I would just stress the underlying statutory construction issue is not a close call. 4244 clearly was never meant to apply to competency issues, and we fit squarely within the statutory language of 4241. It wasn't like Judge Breyer was construing it to reach a context that wasn't literally covered by the terms of the statute. A defendant is permitted to raise the issue of his present ability to act competently in the proceedings up until the time of sentencing. That's exactly what happened in this case. And the government is asking the court, don't pay attention to the plain, don't follow the plain meaning or the plain language of 4241 because we think 4244 means something other than it says. We think 4244, even though it says nothing about competency, is the statute that applies. And I don't think that's the way that statutory construction works. I think you look at the plain meaning of the statute, and unless there's, you know, a very convincing reason to ignore it, to conclude that Congress meant something other than it said, you follow the plain meaning and there is nothing in 4244 that indicates that Congress meant anything other than it said. Thank you, counsel. Thank you, Your Honor. A couple of points, Your Honors. First of all, I just want to – I'm not sure this is determinative of the issue, but the district court did, in fact, say when it was considering what to do with Mr.   Now, if you go back to 5246 – well, actually, it was before this, I guess. If the government doctors find that he is not dangerous, then the only option that the court has at that point is to release him forthwith and dismiss the charges against him. The court had no intention of keeping him under his jurisdiction, re-evaluating But the court hasn't dismissed the indictment. Oh, it hasn't. And, again, that's because we're on appeal. So if he does, don't you have an appeal from that? Well, we would have an appeal from that. So why is that when you can raise all these? Excuse me? Why can't you raise all those issues then? Well, we could – well, because we have a decision now that we believe is the final decision, which is refusing to impose the provisional sentence that is required. But I want to talk a little bit about the two statutes again. First of all, we do not contest that a defendant has to be competent at sentencing. We agree that he does. And that perhaps is what leads to some of the confusion in this case. But it is abundantly clear that 4241 is a trial competency issue. And we know that in several ways. First of all, if you look at sections 4241d, that mentions we're going to try to achieve competency to obtain, to go to trial. If you look at the version that was in effect up until 2006, which is when the statute was modified for unrelated reasons having to do with the Adam Walsh Act and sex offenders, it constantly, continually mentioned we're going to commit him for a short time to see if he can regain trial competency. Trial competency is mentioned throughout. And finally, you want to look at the legislative history on 4241. It couldn't be clearer. The Senate report says that the subsections of 4241 exclusively deal with trial competency. The parties can bring a motion to determine trial competency at any time from arrest or the beginning of the prosecution up until sentencing. Couldn't be clearer. It's a trial competency issue. So really, we want to get back to what we think is the issue here. The issue is what did Congress intend to do with defendants like Mr. Chaudhry who become incompetent or whose competency certainly wasn't raised before the hand and who finally determined to be incompetent before sentencing. And that is 4244. Congress intended that they be committed. They can be committed for a longer term than the defendants who are subject to 4241 because those defendants have not been convicted. There's nothing unconstitutional about treating Mr. Chaudhry for the duration of the term for the maximum term of imprisonment. The government is entitled to keep someone in their custody for that term. It does not implicate any due process concerns. And that is what the statute requires and that is what we believe Congress intended to do. Now, as to the treatment issue, I think the Court was concerned and certainly the Defender brings this up. The fact that he may not be cured doesn't mean that he can't be treated. And in fact, there are many indications in this record that his condition is amenable to treatment. Again, we're not going to cure any organic problems, but the Bureau of Prisons in fact said that these organic problems aren't by themselves causing his incompetency. And even if he doesn't become competent during this 10-year period, he still can be cared and treated, and the government is entitled to commit him during that time period. Any questions? Thank you, counsel. Thank you both for your arguments. The case is currently submitted for decision.
judges: Mills, Wallace, Thomas